IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| BARNEY RONALD FULLER, JR., #999481, | § | |
| | § | |
| *Petitioner,* | § | |
| | § | CIVIL ACTION No. 9:15-CV-15 |
| v. | § | |
| | § | JUDGE RON CLARK |
| DIRECTOR, TDCJ-CID, | § | |
| | § | |
| *Respondent.* | § | |

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

Petitioner Barney Ronald Fuller, Jr., a death row inmate confined in the Texas prison system, filed the above-styled and numbered petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mr. Fuller was convicted of capital murder and sentenced to death in the 349th Judicial District Court of Houston County, Texas, in Cause Number 04-CR-027, in a case styled *The State of Texas v. Barney Ronald Fuller, Jr.* He submitted a request to waive his habeas corpus application and any further appeals and to proceed with execution (Dkt. #13). The court appointed an independent expert to evaluate Mr. Fuller's competency, and after receiving the report, conducted a hearing to determine whether Mr. Fuller's request should be granted.

The court finds that: Mr. Fuller is not suffering from a mental disease, disorder, or defect; that he is mentally competent; that he understands his legal position and the options available to him; that he is able to make a rational choice among his options; and that his waiver is a knowing and voluntary decision made after full opportunity to consult with independent counsel with whom he is satisfied. The court concludes that his request should be granted and that the petition for writ of habeas corpus should be dismissed.

1

# I. PROCEDURAL HISTORY OF THE CASE

The capital murder charge resulted from the murders of Nathan and Annette Copeland on May 14, 2003, in Lovelady, Texas. Mr. Fuller pled guilty to the charges. On July 21, 2004, after a jury trial on punishment, Mr. Fuller was sentenced to death. The Texas Court of Criminal Appeals affirmed the conviction. *Fuller v. State*, 253 S.W.3d 220 (Tex. Crim. App. 2008). The Supreme Court denied his petition for a writ of certiorari. *Fuller v. Texas*, 555 U.S. 1105, 129 S. Ct. 904 (2009). The Texas Court of Criminal Appeals denied his post-conviction application for a writ of habeas corpus. *Ex parte Fuller*, No. WR-78,110-01, 2015 WL 195799 (Tex. Crim. App. Jan. 14, 2015).

The present proceedings began on January 28, 2015. The court appointed experienced counsel for Mr. Fuller, who submitted a well written petition for writ of habeas corpus containing thirteen points or claims for relief. On December 1, 2015, before the State filed its response, counsel for Mr. Fuller informed the court that he wished to waive his habeas corpus application and any further appeals and to proceed with execution. The court ordered that Mr. Fuller be evaluated by Dr. Roger D. Saunders, an expert mutually agreed on by counsel for both Mr. Fuller and the Director. After examining Mr. Fuller, Dr. Saunders submitted a Psychological Evaluation Report, dated May 15, 2016.

# II. EVIDENTIARY HEARING

An evidentiary hearing was conducted on May 24, 2016. Dr. Saunders and Mr. Fuller were the only witnesses. Dr. Saunders began his testimony by discussing his academic background and extensive experience as a forensic psychologist and as a witness in court proceedings. He stated that most of his court work had been on behalf of Defendants. Both his Curriculum Vitae and Psychological Evaluation Report were admitted as exhibits without

objection. The court finds that Dr. Saunders is well qualified to offer an expert opinion about Mr. Fuller's competency, that his evaluation, his report, and his testimony meet the criteria of Federal Rule of Evidence 703, and that his testimony was credible and free from inconsistencies.

Dr. Saunders testified that he reviewed documents that he received from counsel for Mr. Fuller and from counsel for Director concerning Mr. Fuller, including affidavits from a number of family members and people who knew Mr. Fuller, his prison record from the Texas Department of Criminal Justice, a record of a previous psychological interview, and a mental status exam conducted at the prison.[1]

Dr. Saunders testified that he met with Mr. Fuller in a visiting room in the death row area of the Polunsky Unit. The interview lasted three to four hours. Dr. Saunders described Mr. Fuller's demeanor at the time of the meeting as casual and often jovial. Mr. Fuller appeared relaxed. Dr. Saunders characterized the meeting as "a very good interview." To assess Mr. Fuller's state of mind, Dr. Saunders discussed with him his current mental status, his emotional disability, how he was adjusting to prison, his appetite, his sleep, and his orientation. They discussed Mr. Fuller's past history and whether he had any mood disorders or major psychopathology. Dr. Saunders testified that it is his understanding from the records and interview that Mr. Fuller had never been treated for any kind of mental illness. Mr. Fuller had been evaluated, but there was never any need for treatment or mental health services. He added that Mr. Fuller has never received a formal diagnosis of any major psychopathology or problems with adjustment. Even though his education was cut short, Mr. Fuller was able to work and

---

[1] The documents consisted of some 2,500 pages. Because they were mostly medical records and statements about Mr. Fuller which contained information in which Mr. Fuller has privacy interests that outweigh the public's right to disclosure, the documents were ordered sealed and admitted in electronic form.

3

support a family. His "domains of adaptive functioning appeared normal or near normal." Family members described him as very intelligent.

Dr. Saunders noted that prison records reveal that Mr. Fuller was sometimes visited by mental health services for depression or for possibly being suicidal. He had voiced complaints about adverse housing conditions, particularly the heat. When questioned again about this matter by the court, Dr. Saunders explained that Mr. Fuller voiced complaints about the conditions of his confinement, but that such statements were not the product of a mental health problem. Dr. Saunders expressed the opinion that Mr. Fuller adjusted to his environment "fairly well," under the circumstances.

Dr. Saunders testified that he was prepared to perform psychological testing, but he dispensed with that initially because Mr. Fuller forgot his glasses and subsequently due to Mr. Fuller's remarkable adjustment and absence of any psychopathology. Due to the absence of psychopathology, Dr. Saunders determined that there was no need to engage in testing.

Dr. Saunders observed that Mr. Fuller had been reluctant to engage in recommendations for potential appeals. He discussed appeals with Mr. Fuller, who clearly understood the nature of his situation and the appellate process. Mr. Fuller understood that his life could possibly be saved by a successful appeal. He understood that a change in the configuration of the Supreme Court could possibly change the law governing capital punishment. Despite all of these possibilities, Mr. Fuller specified that none of these things would change his desire to waive his appeal.

Dr. Saunders testified that Mr. Fuller was not taking any type of psychotropic medication. Mr. Fuller would not take any medication unless it was for pain or discomfort. He had no intent

4

to take steps to prolong his life or maintain it if he had a recurrence of cancer. He declined to have flu shots and follow-up visits with the oncologist.

Dr. Saunders expressed the opinion that Mr. Fuller had the capacity to appreciate his legal position and to make a rational choice with respect to continuing or abandoning his future litigation. He observed that Mr. Fuller, primarily because of his religious beliefs, felt deserving of the punishment and did not want to prolong his life in the institution. Dr. Saunders expressed the opinion that Mr. Fuller's thoughts on this matter appeared rational and well thought out. When questioned by both Mr. Fuller's counsel and the court, Dr. Saunders testified that Mr. Fuller was not suffering from a mental disease, disorder, or defect that prevented him from understanding his legal position or making a rational choice among his options.

When questioned by the court, Dr. Saunders agreed that people may make a range of choices within their religious convictions, such as foregoing surgery or vaccines, without being diagnosed as having some kind of psychological defect or deficit. He reiterated that Mr. Fuller is not suffering from any kind of major psychopathology. Dr. Saunders testified once more that he was unable to identify any mental disease, disorder, or defect which substantially affected Mr. Fuller from understanding his legal position and the options available to him or prevented him from making a rational choice on his options.

The second and final witness was Mr. Fuller. He testified he clearly understood that a determination that he was competent to waive any further proceedings would stop his habeas review and would allow the State to proceed with his execution. He testified that he was satisfied with the judgment of the State of Texas, and he was "ready to move on." He observed that "what's the point of sentencing someone to death, you know, if you're not going to carry on through with what you've ordered." He testified that no one had made any promises to him or

5

threatened him in order for him to waive his habeas corpus application and any further appeals. He testified that he was aware that his decision to waive, if accepted by the court, would likely be final and that he would not be allowed to change his mind.

Mr. Fuller testified that he was satisfied with the services provided by his attorney. He agreed that his attorney had considered various legal and factual theories, along with the possibility of habeas review. He stated that he was satisfied with the work provided by his attorney and Dr. Saunders. When questioned by counsel, he testified that he did not always cooperate with his attorneys in the past because he believed that it would make things proceed faster. More specifically, he would be executed faster. He added that he did not care for a couple of his attorneys. He reiterated that he was happy with the services provided by his current attorney. Mr. Fuller testified that his attorney had counseled him against waiving further review. Nonetheless, he chose to proceed with a waiver, and counsel honored his decision.

At the conclusion of the hearing, Mr. Fuller clearly testified that he was waiving any further habeas review proceedings and appeals knowingly, freely and voluntary. He added that he made the decision of his "own free will." He made the decision after consulting with his attorney. His attorney reviewed his options with him, and Mr. Fuller chose to waive any further review and appeals.

### III. STANDARD OF REVIEW

Two issues must be considered in determining whether to grant Mr. Fuller's request to waive his habeas corpus proceedings. The first issue concerns whether he is competent to do so. The standard for determining whether a petitioner is mentally competent to waive further review of his death sentence was announced in *Rees v. Peyton*, 384 U.S. 312, 86 S. Ct. 1505 (1966). The Supreme Court specified that the following question should be considered by a district court:

6

> whether he has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises.

*Id.* at 314, 86 S. Ct. at 1506. Relying on *Rees*, the Fifth Circuit has set out the following three part test:

> (1) whether that person suffers from a mental disease, disorder, or defect; (2) whether a mental disease, disorder, or defect prevents that person from understanding his legal position and the options available to him; and (3) whether a mental disease, disorder, or defect prevents that person from making a rational choice among his options.

*Mata v. Johnson*, 210 F.3d 324, 328 (5th Cir. 2000) (citing *Rumbaugh v. Procunier*, 753 F.2d 395, 398 (5th Cir. 1985)).

> If the answer to the first question is no, the court need go no further, the person is competent. If both the first and second questions are answered in the affirmative, the person is incompetent and the third question need not be addressed. If the first question is answered yes and the second question is answered no, the third question is determinative; if yes, the person is incompetent, if no, the person is competent.

*Rumbaugh*, 753 F.2d at 398–99.

When a question arises as to whether a death row inmate is competent to drop his collateral attack on his conviction, "a habeas court must conduct an inquiry into the defendant's mental capacity, either *sua sponte* or in response to a motion by petitioner's counsel, if the evidence raises a bona fide doubt as to his competency." *Mata*, 210 F.3d at 330. "The extent and severity of the petitioner's history of mental health problems which have been brought to the court's attention influence the breadth and depth of the competency inquiry required." *Id.* Due process can be satisfied where the court:

> order[s] and review[s] a current examination by a qualified medical or mental health expert, allow[s] the parties to present any other evidence relevant to the question of competency and, on the record and in open court, question[s] the

7

> petitioner concerning the knowing and voluntary nature of his decision to waive further proceedings.

*Id.* at 331.

The second issue for the court's consideration concerns the voluntariness of the waiver. The Supreme Court has held that a waiver of a petitioner's "right to proceed" is valid only when the choice is "knowing, intelligent, and voluntary." *Whitmore v. Arkansas*, 495 U.S. 149, 165, 110 S. Ct. 1717, 1728 (1990); *see also Gilmore v. Utah*, 429 U.S. 1012, 1013, 97 S. Ct. 436, 437 (1976). A valid waiver must "be not only voluntary but also 'knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *Mata*, 210 F.3d at 329 (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970)). While there are differences between the competency standard for pleading guilty or for standing trial and the *Rees* standard for waiving further appeals, "both standards inquire about the discrete capacity to understand and make rational decisions concerning the proceedings at issue, and the presence or absence of mental illness or brain disorder is not dispositive." *Id.* at 329 n.2.

## IV. ANALYSIS

**A.　Mr. Fuller is not suffering from a mental disease, disorder, or defect**.

The first inquiry is whether Mr. Fuller is suffering from a mental disease, disorder, or defect. In analyzing this question, the court initially considered Dr. Saunders's Psychological Evaluation Report of Petitioner. Dr. Saunders provided the court with an extensive and thorough report based upon his review of the records and his examination. He described Mr. Fuller as jovial and cooperative. Mr. Fuller was oriented to person, place, time, and situation. Dr. Saunders found that his responses were appropriately reactive. There were no delusions, hallucinations, or disorganized thinking observed or reported. Mr. Fuller advised Dr. Saunders that he was neither anxious nor depressed when he asked his lawyers to drop his appeal. Dr.

8

Saunders expressed the opinion that Mr. Fuller presented no clinically-significant psychological symptoms or distress. Based on records provided, Dr. Saunders found that there was no indication of ongoing psychological conditions. Dr. Saunders expressed the opinion that Mr. Fuller was competent. Furthermore, Mr. Fuller voiced no objection to the State carrying out the sentence. Dr. Saunders concluded that Mr. Fuller possesses sufficient present capacity to appreciate his position and can make a rational choice about whether he continues or abandons future litigation, including seeking relief from the death penalty. He added that Mr. Fuller does not currently experience any clinically-significant mental illness that would impact this capacity to any degree.

The court also considered Dr. Saunders's testimony, which was consistent with his report. His testimony was supported by Mr. Fuller's records, which were referred to in the report and attached as a sealed exhibit, and which the court also considered. Dr. Saunders reiterated that Mr. Fuller was not suffering from any psychopathology. Mr. Fuller had never been treated for mental illness or mental retardation. Dr. Saunders testified that Mr. Fuller's domains of adaptive functioning appeared normal or near normal. Overall, he found that Mr. Fuller was not suffering from a mental disease, disorder, or defect and that he was competent.

The court finally considered Mr. Fuller's testimony. Mr. Fuller's testimony gave every indication that he is competent and that he understands his legal position and the options available to him. He understands that a determination that he is competent to waive any further proceedings would stop his habeas review and allow the State to proceed with his execution.

Having considered Dr. Saunders's Psychological Evaluation Report and testimony, Mr. Fuller's records and testimony, and the court's observation and evaluation of Mr. Fuller while in the courtroom, the court finds that Mr. Fuller is not suffering from any mental disease, disorder,

or defect. In other words, the court finds that Mr. Fuller is competent. See *Mata*, 210 F.3d at 328, *Rumbaugh*, 753 F.2d at 398–99.

**B.	Mr. Fuller understands his legal position and the options available to him and is capable of making a rational choice with respect to continuing or abandoning further litigation.**

Mr. Fuller was able to articulately answer all questions presented to him by counsel and by the court. He understands that his life could possibly be saved by a successful appeal. Noting that it is a topic of discussion at the prison, Mr. Fuller stated that he understands that a change in the membership of the Supreme Court is likely, and that a change in the configuration of the Supreme Court could possibly change the law governing capital punishment. He understands that the waiver, if approved by this court, would allow the State to proceed with the execution.

Mr. Fuller's attorney confirmed that he had discussed Mr. Fuller's options with him and had discussed possible strategies and possible outcomes. Nevertheless, Mr. Fuller persisted in his desire to waive further review. When the court discussed his options and the consequences of his waiver with him, Mr. Fuller clearly expressed the desire to waive his habeas corpus application and any further appeals and to proceed with execution.

The court finds that Mr. Fuller understands his legal position and the options available to him and is capable of making a rational choice with respect to continuing or abandoning the habeas corpus review process.

**C.	Mr. Fuller has made a knowing, intelligent, and voluntary decision.**

Mr. Fuller testified that he had consulted with his attorney, with whom he was satisfied. They had discussed various strategies, and Mr. Fuller was aware of the possibility that appointment of one or more new justices to the Supreme Court could change the law applicable to his case. He testified that he was satisfied with the judgment of the State of Texas and was

"ready to move on." This was consistent with what he had told Dr. Saunders about his religious beliefs, his feeling that he was deserving of punishment, and that he did not want to prolong his life in the institution. When questioned by the court, Mr. Fuller denied that anybody had threatened him or promised him any benefit to force him or encouraged him to waive further proceedings. He agreed that his decision was a knowing and voluntary decision, which he made after he consulted with his attorney.

Based upon Mr. Fuller's testimony and his demeanor and actions in court, the report and testimony of Dr. Saunders, and Mr. Fuller's records, the court finds that Mr. Fuller's decision to waive his habeas application and further appeals is not the product of external coercion, influence, or inducement and that Mr. Fuller knowingly, intelligently, and voluntarily waives his right to federal habeas review and any further appeals.

## V. CONCLUSION

The court has considered: (1) the report and testimony of Dr. Saunders, (2) Petitioner's testimony and records; (3) the assertions of Mr. Fuller's attorney concerning his interactions with, and the advice he has given to, Mr. Fuller; and (4) the court's observations of Petitioner during the hearing. The court finds that: Mr. Fuller is not suffering from a mental disease, disorder, or defect and is competent to waive further habeas review; Mr. Fuller has the capacity to appreciate his legal position and has demonstrated to the court a clear understanding of that position, the options available to him, and of the consequences of his decision; and Mr. Fuller is able to make a rational choice between continuing and abandoning further litigation. Finally, the court finds that Mr. Fuller's choice to waive his further review of his habeas corpus application and any further appeals is knowing, intelligent, and voluntary and made after consultation with competent counsel, with whose efforts on his behalf, Mr. Fuller is satisfied.

It is therefore **ORDERED** that Petitioner's motion to waive his habeas application and all further appeals (Dkt. #13) is **GRANTED**. It is further

**ORDERED** that the petition for a writ of habeas corpus is **DISMISSED** with prejudice. It is further

**ORDERED** that all deadlines issued previously in this case are **VACATED**. It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **1** day of **June, 2016.**

_____
Ron Clark, United States District Judge